OSCAR BAUMANN, Appellant, *v.* MARY G. PINCKNEY, Respondent.

*It seems,* an action to compel the specific performance of a contract to sell land may be maintained by the vendee ; he is not confined to his remedy at law; and when the answer in such an action does not raise the question of the right of the plaintiff to bring it, and no such question is raised upon the trial, a decision of the court dismissing the complaint, on the ground that plaintiff has an adequate remedy at law, is error.

In such an action it appeared that after the execution of the contract and before the time fixed for performance the defendant gave the plaintiff a verbal option to extend the time of performance for thirty or sixty days provided at the time fixed for performance the plaintiff would increase the purchase-price and pay an additional sum down. Plaintiff attended at the time and place specified and gave notice that he elected to accept the sixty days option and offered to pay the money required. Defendant was not present but was represented by an agent, who was not empowered to sign an extension for sixty days, and it was claimed on her behalf that in no event did the option permit an extension for more than thirty days. Said agent had no evidence of his authority to act for the defendant in any respect. Plaintiff declined to make the payment except to defendant or some one showing authority to receive it. Said agent thereupon tendered a deed and demanded payment of the balance of the purchase-money called for by the original contract, and upon plaintiff's failure to pay, gave notice, that the contract was at an end and that defendant would retain the purchase-money paid down. Plaintiff gave notice that he was ready to pay the additional sum called for by the verbal agreement at any time that defendant, or any one who could justify as her agent, would call for it. *Held,* that plaintiff had a right to be reasonably satisfied as to the authority of any person claiming to act for defendant and also to insist upon an extension in writing before making the payment; and, it being conceded there was an agreement for an extension, if the parties honestly differed as to the time, plaintiff was entitled to a reasonable time within which

to perform the original agreement; that as plaintiff was not in default defendant could not terminate his rights by a tender of a deed, and having taken an untenable position if she receded therefrom she was bound to give plaintiff notice when and where to perform the original contract, or to complete the modification thereof; and that under the circumstances it was material for the trial court to determine whether the extension was for thirty or sixty days.

The court found it was not material to determine whether the period of extension was thirty or sixty days and refused to find, as requested by plaintiff, it was for sixty days. *Held*, that it must be assumed the refusal to find was because the court deemed it immaterial ; and that the refusal was, therefore, an error of law, even if the fact was not conclusively proved.

Plaintiff attempted to make a tender of the amount required with interest on the sixtieth day pursuant to previous notice to the defendant, but the agent designated by her was not present at the place she had appointed. A tender was made as soon as practicable thereafter, but not until the sixty days had expired. *Held*, that as the fault was not that of plaintiff but of defendant, the tender should be regarded as made within the time required.

*It seems*, that as defendant had repudiated her contract, and declared that all of plaintiff's rights under it were forfeited, he was not bound to make any tender before commencing the action.

The verbal agreement giving plaintiff the option was made on defendants behalf by the same agent who appeared for her at the time fixed for accepting the option. It was claimed for her, that as plaintiff recognized the agency in the former transaction he could not deny it in the latter. *Held*, untenable ; that plaintiff in relying upon the option ran the risk of the agent's authority, and as it appeared that he was duly authorized, and that at the time specified for accepting the option no one authorized by defendant to give an extension for sixty days was present, defendant was in default, provided the option was for sixty days.

*Baumann* v. *Pinckney* (14 Daly, 241), reversed.

(Argued January 16, 1890; decided March 4, 1890.)

APPEAL from judgment of the General Term of the Court of Common Pleas of the city and county of New York, entered upon an order made June 6, 1887, which affirmed a judgment in favor of defendant, entered upon a decision of the court on trial at Special Term.

This action was for the specific performance of an executory contract to convey land situate in the city and county of New York.

The agreement between the parties, dated June 22, 1886, provided that the defendant, in consideration of $126,000, should convey the premises in question to the plaintiff on the 1st of September, 1886, at 1 o'clock P. M., at the office of John C. Shaw. The sum of $2,000 was paid down and the remainder of the purchase-money was to be paid upon the delivery of a deed at the time and place aforesaid. Shortly before the day named for performance of the contract, it was verbally agreed between the parties, each acting through a duly authorized agent, that if at the time and place specified for payment and delivery "the purchase-price of the said premises were increased to $133,000, and a further payment on account thereof of $10,000 were made, or if the purchase-price were increased to $131,000 and a further payment on account thereof of $20,000 were made, the time for performance of the contract should be extended."

Relying upon his right to an extension if he accepted this option in either form, the plaintiff did not prepare to close the contract and pay the remainder of the purchase-price on the first of September, but, by his agent, was present at the hour and place named "with a certified check for $10,000 prepared to pay the same to the defendant," and "requested to have the time for the performance of the contract extended." The defendant was not present, either in person or through any one whom she had authorized to attend and give an extension for sixty days, the period which the plaintiff claimed was embraced by said option. Mr. Shaw was present and also Mr. Pierce, who claimed to be authorized to receive the $10,000, but he had not appeared in the business before, and, although in fact duly authorized to act for the defendant to a certain extent, he had no written authority from her and exhibited no evidence of his authority to act for her either in receiving the money, or otherwise. The plaintiff objected to paying the $10,000 except to the defendant or to some one showing authority from her to receive it. Thereupon Mr. Shaw made a tender of a deed for the premises and demanded payment of the purchase-money unpaid. The plaintiff was

not prepared to carry out that agreement, so Mr. Shaw gave notice that the contract was at an. end and that the defendant would retain the $2,000, which had been paid and that she refused to recognize any further right of the plaintiff in the premises. The plaintiff, through his agent, informed Mr. Shaw that he was ready at any time that the defendant, or some one who could justify as her agent, applied for the same to deliver to her the said $10,000. He refused, however, to accept an extension signed either by Mr. Shaw or Mr. Pierce, upon the ground that they were not properly authorized to execute the same, as neither had any power of attorney, or to deliver the check to either of them, even if made payable by indorsement to the defendant.

The parties differed about the length of the agreed extension, the plaintiff claiming that it was to be for sixty days, while the defendant contended that it was to be for only thirty days. They also differed as to whether, if the contract was extended, the principal sum named therein would draw interest during the period of extension. After the first of September the defendant did not notify the plaintiff to perform the contract and she has never returned nor tendered the $2,000. She owned the premises and had the right to convey them.

A notice of pendency was filed in this action on the second of September, but the summons and complaint, although issued that day, were not served until October twenty-ninth, and in the meantime the defendant, who had no notice of said facts, had contracted to sell the premises to other parties for the sum of $137,500.

The foregoing facts, among others, were found, in substance, by the trial court, and the defendant admitted by her answer that on the twenty-ninth of October, and before the expiration of the term of sixty days, the plaintiff duly notified the defendant that on the next day at her residence, or at such other time and place as she might designate, he would tender to her the balance of the purchase-price, and that he was willing to bring with him a notary public and a deed in readi-

ness for her to execute. She thereupon referred him to her
agent, Mr. Pierce, at his office, and on October thirtieth and
before the expiration of the sixty days the plaintiff called
upon him at that place for the purpose of complying with the
directions of the defendant, but found the office locked. The
plaintiff forthwith gave Mr. Pierce written notice of these
facts and requested the defendant or her agent to designate a
time and place at which such tender could be made. Mr.
Pierce answered, requesting the plaintiff to meet him Novem-
ber first at Mr. Shaw's office, which he did accordingly, and
then and there offered to fulfill his part of the agreement and
tendered the remainder of the purchase-price, $131,000. The
defendant, through her said agent, refused to accept said sum,
and declined to give any deed of the premises upon the ground
that the plaintiff had forfeited the contract and all his rights
thereunder on the 1st of September, 1886. She also refused
to return the $2,000 paid down on the contract upon the
same ground. It appeared that before or at the time that the
summons and complaint were served on the defendant a letter
was delivered to her from the attorney for the plaintiff, stating
that he would be ready to make a tender of the balance of
the purchase-price the next day, October thirtieth, and to
receive her deed ; that he would call upon her with a certified
check for the amount and interest on that day at 11 A. M.;
that if that day or hour would 'not suit, or if she demanded
bills or gold coin he would accommodate himself to her wishes.
He added : "I desire to do anything and everything which
may be necessary to make the tender and payment agreeable
to you, as to both time and place. Please answer by bearer."
The defendant read the letter and referred the bearer to her
representative, Mr. Pierce, designating his office, and stating
that the matter was entirely in his charge for her.

The uncontradicted evidence tended to show that from June
22 to September 1, 1886, the property rapidly increased in
value, and that at the date of the trial in the month of Decem-
ber following it was worth $160,000.

The trial court found as conclusions of law, among others,

that time was the essence of the contract, and, as plaintiff had not performed at the time and place provided in the original agreement, he could not maintain the action; that there was no valid contract made for an extension of the time to perform the agreement; that the refusal of the plaintiff to pay the $10,000 and accept the extension of time from Mr. Shaw or Mr. Pierce, because neither had a power of attorney or other evidence of authority, was based upon untenable grounds and constituted a refusal to accept the option and a failure to perform the contract; that the tender on November first "was insufficient and too late for the purpose of performing the said agreement dated June 22, 1886, as alleged to have been modified by the plaintiff's alleged acceptance of defendant's option;" that the defendant was "entitled to judgment dismissing the complaint in equity because the plaintiff" had "an adequate and complete remedy at law;" and that she was "entitled to judgment in her favor against the plaintiff upon the merits."

The complaint was dismissed upon the merits with costs, and an extra allowance of one per cent upon $126,000, the value of the property as fixed by the original agreement.

Further facts appear in the opinion.

*John E. Parsons* for appellant. The finding of law that the defendant was entitled to judgment dismissing the plaintiff's complaint in equity, because he had an adequate and complete remedy at law, is strictly opposed to well-settled principles of equity jurisprudence. (*Baldwin* v. *Munn*, 2 Wend. 406; *Cockroft* v. *N. Y. & H. R. R. Co.*, 69 N. Y. 204; *Stone* v. *Lord*, 80 id. 60; *Losee* v. *Morey*, 57 Barb. 561; *Town of Mentz* v. *Cook*, 108 N. Y. 504, 509; *Hollister* v. *Stewart*, 111 id. 644, 659; *Ostrander* v. *Weber*, 114 id. 95–102; *Becker* v. *Church*, 115 id. 562.) It was error for the Special Term to decline to find that the parties differed about the length of the agreed extension, whether it was for thirty or sixty days. (*James* v. *Cowing*, 82 N. Y. 449.) It was error for the court to put the plaintiff in default upon the ground that he

objected to pay interest during the extension, and on the further ground that he was required before suit to tender the full consideration, and to keep it good by payment into court. (*French* v. *Kennedy*, 7 Barb. 452; *Bauder* v. *Bauder*, id. 560; *Van Rensselaer* v. *Jewett*, 2 N. Y. 141; *Livingston* v. *Miller*, 11 id. 80; *Viele* v. *T. & B. R. R. Co.*, 21 Barb. 381; *Stevenson* v. *Maxwell*, 2 N. Y. 408; *Cornwell* v. *Haight*, 21 id. 462; *Blewett* v. *Baker*, 58 id. 611; *Lawrence* v. *Miller*, 86 id. 131; *Woolner* v. *Hill*, 93 id. 576; *Becker* v. *Boon*, 61 id. 317; *Tipton* v. *Feitner*, 20 id. 423; *Lester* v. *Jewett*, 11 id. 453; *Hunter* v. *Daniels*, 4 Hare, 420, 433; *Bruce* v. *Tilson*, 25 N. Y. 194.) The Special Term erred in holding that plaintiff was guilty of laches in not serving his summons prior to October 29, 1886. (Code Civ. Pro., § 388; *Peters* v. *Delaplaine*, 49 N. Y. 362.) The Special Term erred in finding that Mr. Shaw was authorized by the defendant to make an extension agreement. (*Higgins* v. *Moore*, 34 N. Y. 417; *Parkin* v. *Thorold*, 16 Beav. 59; *Wells* v. *Maxwell*, 32 id. 408; 11 Wkly R. 842; *Crawford* v. *Toogood*, L. R. [13 Ch. Div.] 153; *Clark* v. *Dales*, 20 Barb. 42, 64; *Goodwin* v. *M. M. L. Ins. Co.*, 73 N. Y. 480, 493; *Prentice* v. *K. L. Ins. Co.*, 77 id. 483; *Titus* v. *G. F. L. Ins. Co.* 81 id. 410, 419; *Fallon* v. *Lawlor*, 102 id. 228, 232; *Davison* v. *Jersey Co.*, 71 id. 333, 338; *M. Bank* v. *Thomson*, 55 id. 7; *Selleck* v. *Tallman*, 87 id. 106.) The law abhors a forfeiture. (*Livingston* v. *Tompkins*, 4 John. Ch. 431; *Lynden* v. *Hepburn*, 3 Sand. 668; *Robinson* v. *Cropsey*, 2 Ed. Ch. 138–147; *Spalding* v. *Halenbeck*, 39 Barb. 79–88.) Equity, so far from inflicting punishment for a misunderstanding, exists for the purpose of affording relief to parties where it might be held that at law they were remiss. (*Duffy* v. *O'Donovan*, 46 N. Y. 223; *Quick* v. *Stuyvesant*, 2 Paige, 84; *Moore* v. *Smeadberth*, 8 id. 600; *Edgerton* v. *Peckham*, 11 id. 352; Story's Eq. Jur. [12th ed.] § 38; *Radcliffe* v. *Warrington*, 12 Ves. 326; *Walker* v. *Wheeler*, 2 Conn. 299; *Messersmith* v. *Messersmith*, 22 Mo. 369; *Hancock* v. *Carlton*, 6 Gray, 39.)

*John C. Shaw* for respondent. The time for performance of the agreement and the acts of the parties therein provided to be performed on the first day of September was made the essence of the contract. (*Wells* v. *Smith*, 7 Paige, 22, 27; *Bullock* v. *Adams*, 20 N. J. Eq. 372; *Benedict* v. *Lynch*, 1 Johns. Ch. 370; *Dominick* v. *Michael*, 4 Sand. 374, 427; *Hubbell* v. *Von Shoenig*, 49 N. Y. 316; *Codding* v. *Wormsley*, 4 T. & C. 52; *Babcock* v. *Emerich*, 64 How. Pr. 435; *King* v. *Ruckman*, 20 N. J. Eq. 316, 344–6; *Carter* v. *Phillips*, 144 Mass. 100; *Goldsmid* v. *Gueld*, 40 Allen, 239.) Payment of the $10,000 as a condition of granting the extension or tender of the same to the defendant before suit brought must be proven before this action can be maintained, and the tender must be kept good by paying the same into court. (Pomeroy on Cont. § 387; Pomeroy's Eq. Juris. 453, note; *Becker* v. *Boon*, 61 N. Y. 317; *Conwell* v. *Claypool*, 8 Blackf. 124; *Morrison* v. *Jacoby*, 13 West. Rep. 390; *Tuthill* v. *Morris*, 81 N. Y. 94, 99–100; *Kortwright* v. *Cady*, 21 id. 342, 347.) Tender before suit is an essential element and a condition precedent to the bringing of an action for specific performance. (Pomeroy on Cont. §§ 336, 361, 363, 387, 411; Waterman on Spec. Per. 438, 441, 443; Fry on Spec. Per. [3d. Am. ed.] 474, note 1; *Irwin* v. *Blackley*, 67 Penn. St. 24, 28; *Johnson* v. *Wygant*, 11 Wend. 48; *Hartley* v. *James*, 50 N. Y. 38; *Gill* v. *Payvenstedt*, 7 Am. L. Reg. 672; *Bogardus* v. *N. Y. L. Ins. Co.*, 101 N. Y. 328; *Wells* v. *Smith*, 7 Paige, 22.) The plaintiff's refusal or failure to pay the $10,000 and accept the extension offered to be signed by the defendant's attorney, John C. Shaw, or her agent, Curtis B. Pierce, based upon their want of authority and absence of the defendant, Mary C. Pinkney, was a refusal on his part to carry out the terms of the option, by reason of which alone, the contract was to be extended and such option offered to them, became, as a matter of law, cancelled and terminated. (Pomeroy on Cont. § 387; *Lawrence* v. *Taylor*, 5 Hill, 107; *Worrell* v. *Munn*, 5 N. Y. 229; *Newton* v. *Bronson*, 13 id. 587; *Dunham* v. *Cudlipp*, 94 id. 129, 134; *Fleischman* v. *Stern*, 90 id. 110, 114; *White* v. *Smith*, 46 id. 418;

Week's on Attorneys, 373, § 216; *Pringle* v. *Spaulding*, 53 Barb. 21; *Newton* v. *Bronson*, 13 N. Y. 587, 594; *O'Connor* v. *Huggins*, 113 id. 511, 521, 522.) The plaintiff has been guilty of such laches as to deprive him of any right to equitable interference of the court. (*Ally* v. *Deschamps*, 13 Ves. 223; *S. E. R. Co.* v. *Knott*, 10 Hare, 122; *Firth* v. *Greenwood*, 1 Jur. [N. S.] 866; *Rogers* v. *Sanders*, 33 Am. Dec. 635, 641; *Gate* v. *Archer*, 42 Barb. 320, 322; Pomeroy on Cont. §§ 364, 403, 407, notes.) The refusal to find that the extension was for thirty or sixty days, because the learned judge deemed it immaterial, does not constitute ground for the reversal of the judgment. (*Baldwin* v. *Doying*, 114 N. Y. 452; *Duncan* v. *Wright*, 105 U. S. 386; Code Civ. Pro. §§ 1023, 993; *M. Ins. Co.* v. *Allen*, 121 U. S. 67; *Callanan* v. *Gilman*, 107 N. Y. 360, 372; *A. C. Bank* v. *Hunsiker*, 72 id. 252, 258; *Loonan* v. *Myers*, 13 Daly, 535, 537; *Hogan* v. *Laimbeer*, 66 N. Y. 604; *Simmons* v. *Richardson*, 5 Hun, 177; *Smithers* v. *G. F. Ins. Co.*, 62 N. Y. 85; *Burnap* v. *Bank*, 96 id. 125, 131.) This case was difficult and extraordinary, and an extra allowance was properly granted. (*Burke* v. *Candee*, 63 Barb. 552; *Conaughty* v. *S. C. Bank*, 92 N. Y. 401.)

Vann, J. The only decision of the Special Term that appears in the record before us consists of the findings proposed by the parties marked "found" or "refused," as the case may be, by the judge who presided at the trial. Thus it happened that the court directed that the complaint should be dismissed, both upon the merits and because the plaintiff had an adequate remedy at law. According to a long and unbroken line of decisions, the latter ground is clearly untenable. As early as 1835, it was said by Chancellor Walworth that a suit in equity against the vendee to compel a specific performance of a contract to purchase land had always been sustained as a part of the appropriate and acknowledged jurisdiction of a court of equity, although the vendor has, in most cases, another remedy by an action at law upon the agreement to purchase. (*Brown* v. *Huff*, 5 Paige, 235.) One of the

earliest decisions of this court was to the same effect (*Crary* v. *Smith*, 2 N. Y. 60), and the right of a vendee to maintain specific performance is too well settled to require further discussion. (*Stone* v. *Lord*, 80 N. Y. 60; Fry on Specific Performance [3d Am. ed.] 8; Pomeroy's Eq. Jur. §§ 30–42.) No such defense was set up in the answer, as the established practice requires, and no such question was raised upon the trial. (*Ostrander* v. *Weber*, 114 N. Y. 95; *Hollister* v. *Stewart*, 111 id. 644, 659.)

As the court, however, did not refuse to consider the case, but exercised its jurisdiction by deciding it upon the merits, it may be that the error above pointed out did not prejudice the plaintiff, because the general result may have been right, although that particular conclusion was wrong. We, therefore, proceed to the other questions presented by the record.

After the execution of the original contract the defendant gave the plaintiff a verbal option to extend the time of performance for thirty or sixty days, provided at the time fixed for carrying out the agreement as it then stood, he would increase the amount of the purchase-price and pay an additional sum down. (*Moody* v. *Smith*, 70 N.Y. 598; *Worrall* v. *Munn*, 5 id. 229.) The plaintiff acted upon this proposition, which was never withdrawn, attended at the time and place specified prepared to accept and perform it, and gave notice that he elected to accept that branch of the option which provided for an extension of sixty days. It was claimed in behalf of the defendant that in no event did the option permit an extension of more than thirty days. She was not present, but she was represented by two agents, neither of whom was empowered to sign an extension for sixty days, or had any evidence of his authority to act for the defendant in any respect. We agree with the learned trial judge in his conclusion that, under these circumstances, "the plaintiff had a right to be reasonably satisfied as to the authority of any person who claimed to act as the agent of the defendant before paying the said ten thousand dollars" and that "as it was agreed between the parties that there should be an extension, the plaintiff was

entitled to a reasonable time within which to perform the original agreement if the parties honestly and in good faith differed as to the length of the extension." We think, however, that these conclusions, together with the facts found by the trial judge, did not justify his refusal to find, as requested, that "the defendant could not terminate the rights of the plaintiff by a tender of the deed made at the time and place mentioned in the contract, after what had passed in reference to an extension."

The plaintiff was not in default. By the invitation of the defendant he attended, through his agent, to modify, not to perform the agreement. He accepted the modification proposed by the defendant, as he understood it, so far as, under the circumstances, he was able prudently to do so. He offered to pay the ten thousand dollars at the time and place required by the option to the person entitled to it, but she was not there to receive it. He · offered to pay it to the gentleman who claimed to be her agent, if he would produce evidence of his authority to receive it, but such evidence was not produced. There was no one present who was authorized by her to sign an extension for sixty days, and although she had verbally authorized one who was there to sign an extension for thirty days, there was no evidence of the fact except his assertion. The option was not withdrawn but was recognized by the defendant as still in force.

The plaintiff, as the trial court held, had the right to be reasonably satisfied as to the authority of the assumed agent · and he also had the right to insist upon an extension in writing, properly signed, before he paid over the money. (*Marvin* v. *Wilber*, 52 N. Y. 270; *Rice* v. *Peninsular Club*, 52 Mich. 87; Mechem's Agency, §§ 276, 290; Dunlap's Paley on Agency, 346.) No offer was made in behalf of the defendant to satisfy the plaintiff as to the question of authority and his right to an extension for sixty days, under any circumstances, was denied. He gave notice that he was ready to pay over the ten thousand dollars at any time that the defendant, or some one who could justify as her agent, applied for it.

Assuming that he was right in his position that the extension was to be for sixty days, what more should he have done? Was he under obligation to pay the money and run the risk, or else be put in default? Was he responsible for the embarrassment of the situation? Was it not the duty of the defendant, either to be at the place appointed in the city where she resided or to have an agent there with proof of his authority, or at least, when the question was raised, to do something to satisfy the plaintiff that it would be safe for him to pay the money? Nothing of this character was done, but on the other hand the plaintiff was notified that the contract was at an end, that the money already paid thereon was forfeited and that he would not be recognized as having any further rights. On the assumption that the extension was to be for sixty days, who was in default or who was next called upon to act at the close of the interview on September 1, 1886? The plaintiff still stood within the lines bounding his legal rights, whereas the defendant had wrongfully repudiated her contract. Having taken an untenable position, if she receded therefrom, she was bound to notify the plaintiff. (*Selleck* v. *Tallman*, 87 N. Y. 106.)

If, after this, she had notified him when, where and with whom he could perform the original agreement, or complete the modification thereof, prompt action would have been required on his part to save his rights. The defendant, however, made no effort of this kind, but adhered to the position that the plaintiff had no rights that she would recognize. Under these circumstances we think that it was material for the trial court to determine whether the option embraced an extension for sixty days or only for thirty days. If it was for the former period, the defendant was in default, because at the time and place specified for the performance of the original agreement and for the completion of the modification according to the option, she was not present and was not represented by a agent authorized to sign an extension for sixty days. The learned trial judge, however, found that it was not material to determine whether the period of extension was to be for

thirty or sixty days and refused to find, as requested by the plaintiff, that it was to be for sixty days. When the finding and the refusal to find are construed together, it must be assumed that he refused so to find because it was immaterial. While he had the power to disbelieve the witnesses for the plaintiff, he had no power to hold that the question was immaterial and on this account to refuse to find as requested. As we have held that the question was material, the refusal, under the circumstances, was an error of law, even if the fact was not conclusively proved. (*James* v. *Cowing*, 82 N. Y. 449 ; Code Civ. Pro. § 993.) But the defendant claims that it was not prejudicial error because, even according to the plaintiff's theory as to the period of extension, he did not tender performance in time. He tried to make a tender of the amount required and interest on the sixtieth day, pursuant to previous notice to the defendant, but the agent designated by her was not present at the place she had appointed and the effort was thus rendered futile. A tender was made as soon as practicable thereafter, but not until the sixty days had expired. This was not the fault of the plaintiff, but of the defendant, and for this reason the tender should be regarded as made within the time required. (*Duffy* v. *O'Donovan*, 46 N. Y. 223 ; *Hubbell* v. *Von Schoening*, 49 N. Y. 326.) Moreover, after the defendant had ruptured all relations with the plaintiff by repudiating her contract and declaring that all his rights thereunder had been forfeited, was he bound to make any tender before commencing an action for specific performance? We do not think that it was necessary for him to go through with the form of making an offer of the money when she had virtually declared that she would not receive it. (*Cornwell* v. *Haight*, 21 N. Y. 462 ; *Bunge* v. *Koop*, 48 id. 225 ; *Blewett* v. *Baker*, 58 id. 611 ; *Lawrence* v. *Miller*, 86 id. 131 ; *Selleck* v. *Tallman*, 87 id. 106 ; *Woolner* v. *Hill*, 93 id. 576 ; *Skinner* v. *Tinker*, 34 Barb. 333.) When the final tender was arranged for, the plaintiff was informed that it would be useless, as the defendant had sold the property and was not in a position to give a

deed. The tender was not refused because not made within the sixty days, but because the contract had been forfeited before the sixty days began to run. (*Duffy* v. *O'Donovan*, 46 N. Y. 223 ; *White* v. *Dobson*, 17 Grat. 262 ; *Brown* v. *Eaton*, 21 Minn. 409 ; *Mattocks* v. *Young*, 66 Me. 459.)

It is claimed that the plaintiff was in default on the 1st of September, 1886, because he was not present in person, but appeared through agents, who did not produce any evidence of their authority to act for him. This claim is not well founded, because the defendant did not question the authority of those who claimed to represent the plaintiff. If she had, *non constat* due authority would have been shown, or the plaintiff would have been called in. On the other hand, the power of those who assumed to represent the defendant to the extent necessary to consummate the option, was distinctly challenged, but nothing was done or offered to be done to remove the objection.

It is also claimed that as the plaintiff recognized the agency of Mr. Shaw in giving the option, he could not deny such agency when the time for accepting the option arrived. The plaintiff, in relying upon the option, ran the risk of Mr. Shaw's authority in the matter, but it turned out that he had been duly authorized to offer the extension ; but at the time specified for accepting the option, it is distinctly found that " no one was present whom the defendant had authorized to attend and give an extension of sixty days." Mr. Shaw's authority, therefore, as well as that of Mr. Pierce, fell short of the requirements of the situation, and the defendant was consequently in default, provided the option was for sixty instead of thirty days. The plaintiff had the right at the time and place specified to give notice that he accepted the option and was ready to perform it, even if there had been no one present, because both the original contract and the option fixed the office and the hour where the former was to be performed and the latter accepted. While the two gentlemen who attended for the defendant had authority to act for her to a certain extent, it was inadequate, as they at the time declared, to per-

fect the extension for the period insisted upon by plaintiff. If he was justified in thus insisting, he had the right to say, as it was proved that he did say, to Mr. Shaw: "We won't take an extension signed by you or Mr. Pierce, but we will take one signed by Miss Pinckney."

After carefully examining the various grounds upon which the learned counsel for the respondent has urged us to affirm the judgment, we are of the opinion that it should be reversed and a new trial granted, with costs to abide event.

All concur, except HAIGHT, J., dissenting.

Judgment reversed.