WARREN EMERSON *vs.* CHARLES F. ATKINSON & others.

Suffolk.    March 29, 30, 1893. — June 21, 1893.

Present: FIELD, C. J., ALLEN, HOLMES, MORTON, & LATHROP, JJ.

*Equity — Agreement of Compromise — Bill to redeem — Partnership — Practice.*

A bill in equity against A. and B. sought, as against A., to establish a partnership with the plaintiff, and to obtain a settlement of the same by a disposition of the partnership assets and payment of the debts. Before an answer was filed, the plaintiff and A. entered into an agreement of compromise of their respective interests. Afterwards a supplemental bill was filed, setting up the agreement; and A. filed an answer to both bills, admitting the agreement, and making various denials, upon which issue was joined. The agreement recited the suit and the desire to settle it, and the terms agreed on, whereby A. was to arrange for renewing or discharging the existing mortgage indebtedness upon certain property, a theatre, as to which the partnership was sought to be established. to an amount named ; and contained the following clauses : "The completion of said arrangements, being the time and condition fixed for the commencement of the operation of this agreement." "Upon the

completion of said arrangements and conditionally thereon, and simultaneously
with the recording of any mortgages or other encumbrances necessary to carry
out said arrangements, said " plaintiff " agrees to discharge his suit in equity,
and to remove from the record any cloud resting thereon by reason of said suit."
" Upon the completion of the foregoing arrangements, and conditionally thereon,
the parties hereto agree to enter into the following relations for the control and ·
management of said property, and for the division of the work to be done in con-
nection therewith." " If A. is unable to carry through the arrangements which
have been agreed upon with B., and if then he co-operates with " the plaintiff,
"and the two together raise the money to discharge or renew B.'s indebtedness,
so that the property is preserved by their joint efforts, then their interests in said
property shall be complete and identical throughout in all respects. The manage-
ment of the theatre, except leasing, to be under the sole charge of A." *Held*, that,
it being conceded that the mortgage indebtedness had not been discharged or
renewed, the agreement was not a settlement of the original case, as against A.
Under the general equity jurisdiction conferred upon this court by the Pub. Sts.
c. 151, § 4, a person may maintain a bill against A. and B., seeking to establish
a partnership with A. in certain property, and to redeem the property from a
mortgage given by A. to B., if the partnership is established.
A bill in equity against A. and B. sought, as against A., to establish a partnership
in certain property with the plaintiff, and to obtain a settlement of the same
by a disposition of the partnership assets and payment of the debts. The bill
alleged that B. held four mortgages upon the property, the first two being upon
different pieces of property and given to secure the same sum, which the plain-
tiff admitted to be valid mortgages to secure whatever might have been ad-
vanced by B. under the same, and the other two mortgages were questioned ;
and prayed that an account might be taken of the amounts advanced by B.,
so far as secured by the first mortgage ; that the third and fourth mortgages
might be delivered up and cancelled ; and that the proceeds of a sale of the
property, ordered by the court through a receiver, might be applied to dis-
charge the first mortgage and all other legal indebtedness of the partnership,
and from the balance to pay to the plaintiff such sum as should be found due to
him upon an accounting. Before an answer was filed, the plaintiff and A.
entered into an agreement of compromise of their respective interests, which
recited the suit and the desire to settle it, and the terms agreed on, whereby A.
was to arrange for renewing or discharging the existing mortgage indebtedness,
not exceeding an amount stated, and containing several clauses indicating that
the agreement was not to take effect as a settlement until this should have been
accomplished. After an answer had been filed by B., the plaintiff filed a supple-
mental bill, setting up the agreement, and offering to redeem the property from
the first two mortgages held by B. *Held*, that the agreement did not cut off the
plaintiff's right to maintain the bill to redeem, as against B. ; and that the case
must stand for further hearing.

BILL IN EQUITY, filed on April 19, 1892, against Charles
F. Atkinson, Isaac F. Woodbury, and George E. Leighton, co-
partners under the firm name of Woodbury and Leighton, and
certain other persons, as to whom the bill was taken for con-
fessed, relating to the property known as the Bowdoin Square
Theatre in Boston. A supplemental bill was filed September
24, 1892. Hearing before *Lathrop*, J., who reported the case

for the consideration of the full court. The facts, so far as material to the points decided, appear in the opinion.

*S. J. Elder & W. M. Stockbridge,* (*H. G. Parker* with them,) for the plaintiff.

*R. M. Morse,* (*F. S. Hesseltine* with him,) for Atkinson.

*G. O. Shattuck & W. A. Munroe,* for Woodbury and Leighton.

ALLEN, J. 1. As against the defendant Atkinson, the bill seeks to establish a partnership with the plaintiff, and to obtain a settlement of the same by a disposition of the partnership assets and payment of the debts. Before an answer was filed, the parties entered into the agreement of June 3, 1892, whereupon the plaintiff filed in the case a statement that he and the defendant Atkinson had entered into an agreement of compromise of their respective interests, a copy whereof was annexed. This was apparently done for the information of the court, or of the other defendants; it was merely a statement, and contained no prayer, and was no part of the regular pleadings in the case, and had no effect upon the rights of the parties. Afterwards a supplemental bill was filed, setting up the same agreement; and the defendant Atkinson, whose answer to the original bill had been delayed, filed an answer to both bills, admitting the agreement of June 3, 1892, and making various denials, upon which issue was joined.

The bill having been dismissed on the reading of the pleadings, the only question, so far as the defendant Atkinson is concerned, is whether the agreement was a settlement of the original case. It seems to us, upon the whole, that it ought not to be so considered. It recites the suit, and the desire to settle it, and the terms agreed on, whereby Atkinson was to arrange for renewing or discharging the existing mortgage indebtedness, not exceeding $155,000, and it contains several clauses indicating that the agreement was not to take effect as a settlement till this should have been accomplished. Among these are the following: "The completion of said arrangements being the time and condition fixed for the commencement of the operation of this agreement." "Upon the completion of said arrangements, and conditionally thereon, and simultaneously with the recording of any mortgages or other encumbrances necessary to carry out said arrangements, said Emerson agrees to discharge his suit in equity, and to remove from the record any cloud resting thereon

by reason of said suit." " Upon the completion of the foregoing arrangements, and conditionally thereon, the parties hereto agree to enter into the following relations for the control and management of said property, and for the division of the work to be done in connection therewith." The various stipulations as to the new state of things were all subject to the condition that in the first instance the mortgage indebtedness should be renewed or discharged. Till Atkinson should accomplish this, the agreement was not to go into effect.

The language most strongly relied on as pointing to the other result is the provision at the end of the contract, as follows : " If Atkinson is unable to carry through the arrangements which have been agreed upon with Woodbury and Leighton [the principal mortgagees], and if then he co-operates with Emerson, and the two together raise the money to discharge or renew Woodbury and Leighton's indebtedness, so that the property is preserved by their joint efforts, then their interests in said property shall be complete and identical throughout in all respects. The management of the theatre, except leasing, to be under the sole charge of Atkinson." This, however, does not have the effect to make the agreement of settlement operative, unless action should be taken in accordance with its terms. It adds another contingency under which the compromise is to stand ; but unless Atkinson co-operates with Emerson, and the two together raise the money, the agreement remains ineffectual. The first scheme was that Atkinson alone should raise the money or renew the indebtedness. The supplemental scheme was, that if he should be unable to do it, and if the two together should accomplish it, then Emerson should have a greater interest. But the discharge or renewal of the indebtedness in some way was the essential thing to be accomplished, and unless this should be done the agreement of compromise was not to go into effect.

We are therefore of opinion that the execution of the agreement is not a sufficient reason for dismissing the suit as to Atkinson ; it being conceded that the mortgage indebtedness has never been discharged or renewed.

2. As against the defendants Woodbury and Leighton, the mortgagees, the case stands as follows. The plaintiff's original bill as against them was not a bill to redeem, but the averments were that they held four mortgages upon property which the

plaintiff contended belonged to the partnership consisting of himself and Atkinson; the first two mortgages were upon different pieces of property, and were given to secure the same sum, $75,000, which the plaintiff admitted to be valid mortgages to secure whatever might have been advanced by Woodbury and Leighton under the same; and the other two mortgages, amounting to $65,000 more, were questioned. The bill prayed that an account might be taken of the amounts advanced by Woodbury and Leighton, so far as secured by the first mortgage; that the third and fourth mortgages might be delivered up and cancelled; and that the proceeds of the sale of the property might be applied to discharge said first mortgage, and all other legal indebtedness of the partnership, and from the balance to pay to the plaintiff such sum as should be found due to him upon an accounting. There was no offer to redeem, and the plaintiff obviously did not contemplate the redemption of the property from the mortgages by the raising or payment of any money by himself; but he sought to have a sale ordered by the court, through a receiver, and to have the sums due to the mortgagees ascertained, and paid from the proceeds of the sale. In a bill to redeem, the offer to redeem is an essential feature. Pub. Sts. c. 181, § 21. *Way* v. *Mullett*, 143 Mass. 49. *Brown* v. *South Boston Savings Bank*, 148 Mass. 300, 307. *Kopper* v. *Dyer*, 59 Vt. 477, 489. *Goldsmith* v. *Osborne*, 1 Edw. Ch. 560. Jones on Mortgages, § 1095, and cases cited. No question, however, arises upon the point whether the plaintiff could maintain his bill on any other ground than as a bill to redeem, because, after answer filed by Woodbury and Leighton, the plaintiff filed a supplemental bill in which he makes the requisite offers to redeem the first two mortgages held by them, and supplies the elements necessary to convert his bill into a bill to redeem, so far as those two mortgages are concerned.

The defendants Woodbury and Leighton now contend that the plaintiff is not a person entitled to redeem, and they rely on Pub. Sts. c. 181, § 21, providing that " when the condition of a mortgage has been broken, the mortgagor or any person lawfully claiming or holding under him may redeem the mortgaged premises, unless," etc. Under a similar provision in Rev. Sts. c. 107, § 13, it was held in *McDougald* v. *Capron*, 7 Gray, 278, that one whose only interest in the premises was by virtue of a

bond for a deed, was not entitled to redeem, the court having no jurisdiction except under the statute; and it was said that the statute was intended to comprehend only those suits which were brought by the mortgagor, or by a person to whom his legal title had been transferred by deed, or by operation of law. Since that decision full equity jurisdiction has been conferred upon the court, and it was thereby designed to add to the jurisdiction previously existing. St. 1877, c. 178, § 1. This statute was re-enacted in Pub. Sts. c. 151, § 4, and the retention of the other provision in c. 181, § 21, does not limit the more general jurisdiction conferred by St. 1877, c. 178, § 1, and re-enacted in c. 151, § 4. We do not determine whether, under Pub. Sts. c. 181, § 21, taken alone, the plaintiff might, on proof of his alleged interest as partner, be entitled to redeem. The St. of 1877, c. 178, § 1, was designed to confer jurisdiction in equity of all cases and matters of equity cognizable under the general principles of equity jurisprudence. *Billings* v. *Mann*, 156 Mass. 203. According to those general principles, the interest of the plaintiff as partner, if established, is sufficient to entitle him to redeem. *Dyer* v. *Clark*, 5 Met. 562. *Shanks* v. *Klein*, 104 U. S. 18. *Davis* v. *Wetherell*, 13 Allen, 60. *Briggs* v. *Davis*, 108 Mass. 322. *Lamb* v. *Montague*, 112 Mass. 352. *Bacon* v. *Bowdoin*, 22 Pick. 401. *May* v. *Gates*, 137 Mass. 389, 391. 4 Kent Com. 162. 2 Story, Eq. Jur. § 1023. Story, Part. (7th ed.) §§ 92, 93.

These defendants further contend that the agreement of compromise cuts off the plaintiff's right to maintain this suit further against them. The chief argument in support of this position, in addition to those urged in behalf of the defendant Atkinson and heretofore considered, is that the agreement had the effect to postpone for an indefinite period the proceedings in court, and thus to postpone the adjustment of their rights; that the plaintiff, in order to establish any right against these defendants, must first establish his partnership with Atkinson; and that this question was necessarily deferred by reason of the agreement. It is urged that it is a great hardship upon Woodbury and Leighton to compel them to remain parties to a litigation between Emerson and Atkinson, when they, as mortgagees, have no interest except to obtain the money justly due to them.

It seems to us, however, that the agreement does not have the effect absolutely to cut off the plaintiff's right to redeem, though

it might well lead the court to exercise other powers which it possesses in behalf of the mortgagees. It is not essential, in a case like this, to postpone the settlement of the rights of the mortgagees till a decision can be reached upon the questions between Emerson and Atkinson. So long as the plaintiff's case stood upon his original bill, the mortgagees' right to proceed under the powers of sale contained in their mortgages, would not be cut off, because that effect is only given to a bill to redeem. *Way* v. *Mullett,* 143 Mass. 49. But since the filing of the supplemental bill the suit is to be treated as a suit for redemption, and, by virtue of Pub. Sts. c. 181, § 28, as well as by the general powers exercised by courts of chancery, the court might properly pass an interlocutory order directing any sum not really in dispute to be paid to the mortgagees. The court might also, by a preliminary hearing upon this question alone, ascertain and determine either finally or approximately the sum due to these defendants, without delaying to hear the matters in dispute between the plaintiff and Atkinson, and might order the amount to be paid over by a certain day, making such provision as might be necessary or reasonable for the security of the plaintiff, while consistent with the rights of these defendants in respect to their other mortgages, in case the plaintiff should fail to establish the partnership with Atkinson, and thus to establish his right to redeem. *Brown* v. *South Boston Savings Bank,* 148 Mass. 300, 308. *Bancroft* v. *Sawin,* 143 Mass. 144. *Clarkson* v. *De Peyster,* Hopk. 274. 2 Dan. Ch. Pl. & Pr. (4th Am. ed.) 1000, and cases cited, 1672, and 1770. Seton on Decrees, (1st Am. ed.) 459. A suit to redeem is a suit in equity, and is subject to the rule that he who seeks equity must do equity. *Fay* v. *Valentine,* 12 Pick. 40. *Dary* v. *Kane,* 158 Mass. 376. *Shaw* v. *Abbott,* 61 N. H. 254. It was and is within the power of these defendants to set the case down for a hearing before a single justice, or to make application for such hearing upon so much of the case as concerns them. So in a suit like this, where the mortgage contains a power of sale, and where the plaintiff in his prayers for relief has asked for a sale, we see no difficulty in the way of authorizing the mortgagees to proceed with a sale under the power, and under the direction of the court, either absolutely, or unless within a certain time the plaintiff should pay into court a specified sum. The decision in *Gold-*

*smith* v. *Osborne,* 1 Edw. Ch. 560, is not applicable to a case like this.

The result is that the entry must be,

*Case to stand for further hearing.*